# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

JOHN SOKOL, individually and on behalf
of classes of similarly situated individuals,

                *Plaintiff,*

        v.

FORTEGRA FINANCIAL CORPORATION,
a Delaware corporation, and
ENSURETY VENTURES, LLC d/b/a,
OMEGA AUTO CARE, a Missouri corporation,

                *Defendants.*

CASE NO:
3:18-cv-262-J-34 PDB

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL WITH INJUNCTIVE RELIEF SOUGHT

Plaintiff John Sokol (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

### NATURE OF THE ACTION

1.      In a misguided effort to market automotive warranties, Fortegra Financial Corporation (hereafter "Fortegra"), an underwriter of such products, engaged Ensurety Ventures. LLC d/b/a Omega Auto Care (hereafter "Omega") (collectively hereafter "Defendants"), an administrator of such products, to establish an automated calling operation to place unsolicited telemarketing calls to the cellular telephones of thousands of consumers nationwide.

2.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendants in contacting Plaintiff and Class Members on their cellular telephones without their prior express consent within the meaning of the Telephone

1

Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA"). Defendants have violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express consent within the meaning of the TCPA. .

3.     On behalf of the classes, Plaintiff seeks an injunction requiring Defendants to cease all unauthorized automated telephone calls, and an award of statutory damages to the members of the classes, together with costs and reasonable attorneys' fees.

### JURISDICTION AND VENUE

4.     This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges national classes, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

5.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.     This Court has personal jurisdiction over Defendants because Defendants' principal places of business are in this District and a substantial part of the events concerning the unauthorized robocalls at issue occurred in this District, establishing minimum contacts showing Defendants have purposefully availed themselves of the resources and protection of the State of Florida.

2

7.    Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendants' principal places of business are located in this District and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

8.    Venue is proper in the Jacksonville Division of this District because both Defendants have their principal places of business in or near Jacksonville, Florida.

## PARTIES

9.    Plaintiff Sokol is, and at all times relevant has been, a resident of the State of Ohio.

10.    Defendant Fortegra is a nationwide provider of automotive warranty underwriting services and a subsidiary of Tiptree Financial, Inc. Fortegra is a Delaware corporation with its principal place of business located in Jacksonville, Florida.

11.    Defendant Ensurety Ventures LLC d/b/a Omega Auto Care is a nationwide provider of automotive warranty administration services. Ensurety Ventures, LLC is a Missouri corporation; Omega Auto Care's principal place of business is located Jacksonville, Florida.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

### The TCPA's Restrictions on Calls to Cellular Telephones

12.    In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.    The TCPA regulates, among other things, the use of automatic telephone dialing equipment, or "autodialers."

14.    Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

15.    According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.    The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

17.    On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).

## The TCPA's Restrictions on Calls to Residential Telephone Numbers

18.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated

or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone
> calls, regardless of the content or the initiator of the message, to be a nuisance and
> an invasion of privacy...
>
> Banning such automated or prerecorded telephone calls to the home, except when
> the receiving party consents to receiving the call[,] . . . is the only effective means
> of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12).

19.     The TCPA prohibits persons from initiating any telephone call to a residential

telephone line using a prerecorded voice to deliver a message without the prior express consent

of the called party, unless the call is initiated for emergency purposes or is exempted by rule or

order of the FCC.  47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

## FACTUAL ALLEGATIONS

### Fortegra and Omega's Marketing Arrangement

20.     Fortegra is, and at all times mentioned herein was, a "person," as defined by 47

U.S.C. § 153(39).

21.     Fortegra is a nationwide provider of automotive warranty underwriting services to

numerous warranty administrators, including but not limited to Omega.

22.     Omega is, and at all times mentioned herein was, a "person," as defined by 47

U.S.C. § 153(39).

---

[3] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory
Ruling, 23 FCC Rcd 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling").

23.     Omega is an automotive warranty administrator who sells and services automotive warranty policies to consumers nationwide and partners with Fortegra with respect to such policies.

24.     The company website for Omega Autocare prominently displays its affiliation with Fortegra and includes a large Fortegra company logo on its "About Us" webpage. The website also states that "Omega Auto Care is insured by Lyndon Southern Insurance Company ("Lyndon"), a Fortegra company." On information and belief, Lyndon is a wholly owned subsidiary of Fortegra.

25.     In an effort to increase the sales of their automotive warranty products, Fortegra partnered with Omega to establish an automated calling operation to solicit potential customers nationwide.

26.     On information and belief, the call centers established on behalf of Defendants were operated by third-parties which marketed their goods and services by using an ATDS to place telephone calls to the phone numbers of thousands of potential customers every day.

27.     The automated calling operation was established to act on Defendants' behalf to solicit the purchase Defendants' automotive warranty services.

28.     Defendants, through their automated calling operation, engaged in the mass transmission of unsolicited robocalls to the cell phones nationwide of what they hoped were potential customers of Defendants' automotive warranty services.

29.     The Federal Communication Commission has instructed that sellers such as Defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases

6

> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "[s]ellers may have
> thousands of 'independent' marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

30.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf

a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing

"on behalf of" liability in the context of an autodialed or prerecorded message call sent to a

consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

31.     The FCC has explained that its "rules generally establish that the party on whose

behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules &*

*Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order,

10 FCC Rcd 12391, 12397 (¶ 13) (1995).

32.     Omega, or some unnamed entity working on Omega's behalf, made the

autodialed and prerecorded message calls described herein "on behalf of" Defendants within the

meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

33.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a

corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

34.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

35.     The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

36.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

---

[4] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

37.     Defendants are directly liable for the telemarketing calls made on their behalf because they actively participated in those calls and issued quotations for insurance wholly derived from those calls.

38.     Defendants were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

39.     Defendants knew (or reasonably should have known) that their vendors were violating the TCPA on their behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

40.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Plaintiff Sokol**

41.     On May 8, 2017, Plaintiff Sokol received an automated call appearing to come from telephone number 614-335-4282 on his cellular telephone.  This call was made using a predictive or automated dialing technology, as demonstrated by the substantial pause at the beginning of the call prior to a human voice coming on the line.  Mr. Sokol said "Hello?" approximately four times, waiting for the party who had called him to respond.

42.     When a human finally did come on the line, the sales associate identified himself as calling on behalf of Omega Auto Care, and proceeded to give a sales pitch for automotive

9

warranty services.  To investigate the source of this call, Plaintiff Sokol remained on the phone with the Omega representative for approximately 16 minutes, and he received a quote for an extended auto warranty.  The unauthorized robocall placed by Defendants invaded Plaintiff Sokol's privacy and interfered with his use of his cellular telephone.

43.     Plaintiff Sokol has never contacted Omega or any of the other Defendants for any purpose, and has no business relationship with any of the Defendants.

44.     Defendants are, or should have been, aware that the automated calling operation marketing their warranties was placing telephone solicitation calls in violation of the TCPA.

45.     Plaintiff Sokol received all calls as described above on his cellular telephone assigned a number ending in 7657.

46.     Defendants are, or should have been, aware that the automated calling operation marketing their warranties was placing telephone solicitation calls in violation of the TCPA.

47.     Plaintiff Sokol understood the purpose of Defendants' calls was to market Defendants' services and solicit business from him.

48.     Plaintiff Sokol did not consent to being called by Defendants for telemarketing purposes and the calls received from Defendants were an intrusion into Plaintiff's privacy and caused Plaintiff Sokol annoyance and an unnecessary expenditure of his time and efforts.

49.     Plaintiff Sokol is the exclusive user of the telephone assigned the number ending in 7657 and the account holder of record for that account.

### CLASS ACTION ALLEGATIONS

50.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

10

51.     Plaintiff brings this action on behalf of himself and the following classes (together, the "Classes") pursuant to Federal Rule of Civil Procedure 23.

52.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

(i) The Fortegra Class: All persons in the United States and its Territories who, within four years prior to the commencement of this litigation, received one or more telephone solicitation calls on their cellular telephone advertising the sale of automotive warranties underwritten by Fortegra through an automated telephone dialing system without providing prior express consent to receive such phone calls.

(ii) The Written Consent Subclass: All persons in the United States and its Territories who, since October 16, 2013, received one or more telephone solicitation calls on their cellular telephone advertising the sale of automotive warranties underwritten by Fortegra through an automated telephone dialing system without providing prior express written consent to receive such phone calls.

(iii) The Omega Subclass: All persons in the United States and its Territories who, within four years prior to the commencement of this litigation, received one or more telephone solicitation calls on their cellular telephone advertising the sale of automotive warranties administered by Omega through an automated telephone dialing system without providing prior express consent to receive such phone calls.

53.     Plaintiff Sokol is a member of, and will fairly and adequately represent and protect the interests of, these Classes and Subclasses.

11

54.     Excluded from the Classes and Subclasses are Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

55.     Plaintiff does not know the exact number of members in the Classes and Subclasses, but Plaintiff reasonably believes Class members number, at minimum, in the thousands in each class and subclass.

56.     Plaintiff and all members of the Classes and Subclasses have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

57.     This Class Action Complaint seeks injunctive relief and money damages.

58.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

59.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

60.     Further, all members of the Classes and Subclasses can be identified through records maintained by Defendants and/or their telemarketing agents and/or telephone carriers.

61.     There are well defined, nearly identical, questions of law and fact affecting all parties.

62.     The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class and Subclass members.

12

63.    Such common questions of law and fact include, but are not limited to, the following:

      a.    Whether Defendants used an automatic telephone dialing system or an artificial or prerecorded voice in its non-emergency calls to Class members' telephones to promote its goods or services.

      b.    Whether agents operating on behalf of Defendants used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

      c.    Whether Defendants or their agents used an artificial or prerecorded voice in its non-emergency calls to Class members' cell phones;

      d.    Whether the Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

      e.    Whether the Defendants' conduct was knowing and/or willful;

      f.    Whether the Defendants are liable for statutory damages; and

      g.    Whether the Defendants should be enjoined from engaging in such conduct in the future.

64.    A a persos who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice or calls, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

65.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

66.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

67.     Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## COUNT I
### Statutory Violations of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of all Classes and Subclasses.

69.     Defendants'acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

70.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## COUNT II
### Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of all Classes and Subclasses

73.     Defendants'acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

74.     As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

75.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.      Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.      As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.      As a result of Defendants' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every violation of the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: February 19, 2018                    By: _/s/ James J. Boyle_____

James J. Boyle (Trial Counsel)
Florida Bar # 35412
BOYLE & GALNOR, P.A.
James J. Boyle
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202
Telephone: (904) 516-5507

Email:  james@boyleandgalnor.com


Jonathan D. Selbin
*pro hac vice* to be filed
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
Email:  jselbin@lchb.com


Daniel M. Hutchinson
*pro hac vice* to be filed
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  dhutchinson@lchb.com


Matthew R. Wilson
*pro hac vice* to be filed
Michael J. Boyle, Jr.
*pro hac vice* to be filed
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066
Email:  mwilson@meyerwilson.com
Email:  mboyle@meyerwilson.com

*Attorneys for Plaintiff and the Proposed*
*Classes*