**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| JOHN SOKOL, individually and on behalf of classes of similarly situated individuals, | ) ) | |
| | ) | **Case No. 3:18-cv-00262** |
| *Plaintiff*, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | **Judge Brian J. Davis** |
| FORTEGRA FINANCIAL CORPORATION, a Delaware corporation, and | ) ) | |
| ENSURETY VENTURES, LLC d/b/a, | ) | **Magistrate Judge Patricia** |
| OMEGA AUTO CARE, a Missouri corporation, | ) | **Barksdale** |
| | ) | |
| *Defendants*. | ) | |

## OPPOSITION TO ENSURETY VENTURES, LLC d/b/a OMEGA AUTO CARE'S MOTION TO DISMISS

### I.    INTRODUCTION

Plaintiff John Sokol ("Plaintiff") alleged the following facts in the Corrected Complaint (Dkt. No. 10):  (1) on May 8, 2017, Plaintiff received an autodialed call on his cellular telephone (¶ 41); (2) when a live person eventually came on the line in the course of that call, the sales representative stated that the call was made on behalf of Ensurety Ventures, LLC d/b/a Omega Auto Care ("Omega") (¶ 42); (3) the sales representative attempted to sell to Plaintiff an Omega product—an auto warranty (*id.*); (4) the sales representative provided to Plaintiff a quote that would allow Plaintiff to buy an auto warranty policy from Omega and underwritten by Defendant Fortegra Financial Corporation ("Fortegra").[1]  (*id.*).

Logically, one of three things must be true: (1) Omega made the call to Plaintiff, and Omega personnel attempted to sell the Omega product to Plaintiff; (2) some third-party actually

---

[1] Plaintiff addresses the factual allegations regarding Fortgra in a separately-filed brief and will not repeat those arguments here.

1

dialed the call to Plaintiff, and then immediately transferred the call to Omega personnel who attempted to sell the Omega product to Plaintiff; or (3) some third-party dialed the call to Plaintiff, and then personnel from that third-party attempted to sell an Omega product on behalf of Omega and Fortegra.  Which of these scenarios actually happened is currently known only to Omega, and will come to light via discovery that Plaintiff has served on Omega.  But these three possibilities flow logically and in a common-sense fashion from the facts pled by the Plaintiff in the Corrected Complaint.  And, under any of these three scenarios, Omega is liable for the call under the Telephone Consumer Protection Act ("TCPA")—either directly (Scenario #1), or vicariously (Scenarios #2 and #3).  Without the benefit of discovery, Plaintiff properly alleged both direct liability, and, in the alternative, vicarious liability.

Ignoring this logic and common sense, Omega moves to dismiss the Corrected Complaint on the ground that Plaintiff has not sufficiently pled either direct or vicarious liability.  This is nonsense.  With regard to direct liability, Omega incorrectly claims that Plaintiff "conceded" that Omega did not make the call to Plaintiff.  (Dkt. No. 26, at 4).  Plaintiff has done no such thing— Plaintiff pled that he received a call during which the live person that the call was made on behalf of Omega. Thus, Plaintiff alleged that Omega made the call itself (through what may have been its employee).  Similarly, Omega argues that Plaintiff has not pled vicarious liability (*id.* at 6).  Plaintiff alleged, in the alternative, that a third-party made the call on behalf of Omega.  It did so: (1) representing itself as acting on behalf of Omega; (2) using Omega's trade name; (3) selling an Omega product; and (4) offering a quote for services to be fulfilled by Omega, with the proceeds of which to be paid to Omega.  These are precisely the indicia of agency that the FCC has identified as necessary to make out a claim of vicarious liability.

Discovery that has already been served in this case will allow Plaintiff to establish

2

whether Omega itself or a third party acting on behalf of Omega and Fortegra placed the calls at issue.  The Corrected Complaint provides a clear roadmap for what the claims against Omega are and how this case will proceed, which is the purpose of a complaint and the standard for determining a motion to dismiss under Rule 12(b)(6).  Under that standard, Plaintiff has sufficiently alleged Omega's liability, and thus Omega's Motion to Dismiss should be denied.

## II.   <u>ARGUMENT</u>

"Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting the rule).  "Rule 8's pleading standard 'does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citations omitted)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 678 (internal quotation marks and citations omitted).  "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability."  *Chaparro*, 693 F.3d at 1337 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Nevertheless, "in considering a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint must be accepted as true and construed in the light most favorable to Plaintiffs."  *Broadcast Music, Inc. v. 845 North, Inc.,* No. 3:13-cv-1533, 2014 WL 12618334, at *1 (M.D. Fla. May 12, 2014).

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

telephone dialing system or an artificial or prerecorded voice--to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA also prohibits persons from initiating any telephone call to a residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the FCC.  47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

In interpreting these statutory provisions, the Federal Communications Commission has placed primary liability for illegal telemarketing calls on the company that benefits financially from selling the products at issue, as opposed to any third-parties retained to make the telemarketing calls.

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6588 (¶ 37) (May 9, 2013) ("2013 FCC Ruling") (internal citations omitted); *see also In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (noting that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.")  In service of those goals, the FCC held that the liability of a company for telemarketing calls made on its

4

behalf by a third-party telemarketer "extends beyond classical agency" and encompasses scenarios where that third-party "has apparent (if not actual) authority" to make the calls. 2013 FCC Ruling, 28 FCC Rcd at 6586 (¶ 34). Such apparent authority "may" be demonstrated by "evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information;" "[t]he ability by the outside sales entity to enter consumer information into the seller's sales or customer systems;" or "the authority to use the seller's trade name, trademark and service mark." 2013 FCC Ruling, 28 FCC Rcd at 6592 (¶ 46). Evidence of the relationship between the seller and the third party "may [be] acquired through discovery, if [plaintiffs] are not independently privy to such information. . . ." *Id.* In any apparent agency scenario, "the seller [has] the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*

Whether a party has an agency relationship for TCPA telemarketing purposes is a question of fact. *Legg v. Voice Media Group, Inc.,* 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) (citing *Johnson v. Unique Vacations, Inc.*, 498 Fed.Appx. 892, 894 n. 3 (11th Cir.2012) (per curiam)).

### A.     Plaintiff Has Plausibly Pled Omega's *Direct* Liability

Plaintiff pled in the Corrected Complaint that the call he received was made "on behalf of Omega Auto Care." (Dkt. No. 10, at ¶ 42). This language was chosen because that is what the sales representative told Plaintiff when Plaintiff asked the representative who was calling him. Omega seizes on this language to assert that "Plaintiff conceded that Omega did not place or make the single call at issue . . . ." (Dkt. No. 26, at 4). This is because, Omega claims, "the

Defendants, lumped together, are 'directly liable for the telemarketing calls made *on their behalf*." (*Id.* (quoting Dkt. No. 10, at ¶ 37).

Nothing in the language Omega cites suggests that Plaintiff has conceded that Omega did not make the call itself. First, nothing in the TCPA or the FCC's interpretive guidance states, or even implies, that only a single entity can be responsible for an illegal telemarketing call. The fact that Plaintiff pled that Fortegra is also responsible has no bearing on Omega's potential direct liability. Second, Plaintiff has pled liability based on what Omega's representative told Plaintiff during the very call at issue—that the call was made on behalf of Omega. This statement from the sales representative supports the allegation that Omega itself made the call— a call made by an Omega employee would be on behalf of and for the benefit of Omega.

The question of whether or not Omega actually dialed the call, or whether the call was made by some currently unknown third party, will come to light in due course through the process of discovery. Omega's direct liability is a quintessential example of a claim based on "enough fact to raise a reasonable expectation that discovery will reveal evidence of the defendant's liability." *Chaparro*, 693 F.3d at 1337 (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted)).

**B.      Plaintiff Has Plausibly Pled Omega's *Vicarious* Liability in the Alternative**

Omega also asserts that Plaintiff has not sufficiently pled that Omega is vicariously liable. (Dkt. No. 26, at 6). As previously stated, Plaintiff has pled the following facts: (1) when Plaintiff was eventually connected with a live sales representative, the representative stated that the call was made on behalf of Omega; (2) the sales representative attempted to sell to Plaintiff an Omega auto warranty; and (3) the sales representative provided to Plaintiff a quote on a Omega auto warranty (Dkt. No. 10, at ¶ 42).

6

Accepting these facts as true for purposes of a Rule 12(b)(6) motion, *see, e.g., Broadcast Music, Inc.*, 2014 WL 12618334, at *1, Plaintiff has sufficiently pled vicarious liability.  If Omega itself did not call Plaintiff, the sales representative was apparently authorized to use Omega's name in the course of its sales efforts and represent that he was calling on behalf of Omega.  In addition, he was apparently authorized to sell auto warranty policies in Omega's name and on Omega's behalf, even to the point of being able to quote a price to be paid to Omega for Omega's services.

The FCC provides a non-exhaustive list of elements that are evidence of vicarious liability for TCPA telemarketing liability.  Even without the benefit of discovery, Plaintiff's allegations meet at least two of the four primary criteria identified by the FCC.  First, the fact that the sales representative quoted a price for an Omega policy underwritten by Fortegra demonstrates that the third-party has "access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services. . . ."   2013 FCC Ruling, 28 FCC Rcd at 6592 (¶ 46).  In addition, the unnamed third-party identified itself as calling on behalf of Omega, representing "the authority to use the seller's trade name, trademark and service mark. . . ."  *Id.*

It is conceivable that discovery will reveal that the unnamed third party was some rogue entity that had no authority to use Omega's name nor to issue quotes for Omega's warranties.  But this determination is in the future, after discovery has been conducted, and is not appropriate at the motion to dismiss stage.  *See* 2013 FCC Ruling, 28 FCC Rcd at 6592-93 (¶ 46) ("At a minimum, evidence of these kinds of relationships— which consumers may acquire through discovery, if they are not independently privy to such information — should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly

assume that the telemarketer was acting as the seller's authorized agent.").

Omega cites a series of cases where the plaintiffs made *no* allegations that would support vicarious liability. *See Abramson v. 1 Glob. Capital, LLC,* No. 15-cv-61373, 2015 WL 12564318, at * 3 (S.D. Fla. Sept. 23, 2015) ("Plaintiff fails to press the point, instead merely stating, without legal support, that third parties are regularly utilized by telemarketers."); *Melito v. Am. Eagle Outfitters, Inc.,* No. 14-CV-2440, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) ("Significantly absent from Plaintiffs' allegations, however, is any factual content regarding the relationship between Experian and Archer."); *Seri v. Crosscountry Mortgage, Inc.,* No. 1:16-cv-1214, 2016 WL 5405257, at * 6 (N.D. Ohio Sept. 26, 2016) ("Based on the Complaint, it is, in fact, unclear how or why Seri believes CrossCountry—as opposed to any other specific seller—was involved in any of the calls he received.")  This is simply not the factual scenario presented by this case—Plaintiff has alleged that the calls he received were made on behalf of Omega because the sales representative *told him* the call was on behalf of Omega, tried to sell him an Omega policy, and quoted him a price to be paid to Omega for that warranty.  All of these facts are set forth in the Corrected Complaint, and they (individually and collectively) are sufficient to plausibly allege that Omega is vicariously liable for the call to Plaintiff.

## II.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that Omega's Motion to Dismiss be denied.

Respectfully submitted,

Dated:  May 15, 2018                    By: _/s/ James J. Boyle_____

James J. Boyle (Trial Counsel)
Florida Bar # 35412

BOYLE & GALNOR, P.A.
James J. Boyle
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202
Telephone:  (904) 516-5507
Email:  james@boyleandgalnor.com


Jonathan D. Selbin (*pro hac vice*)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
Email:  jselbin@lchb.com


Daniel M. Hutchinson (*pro hac vice*)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  dhutchinson@lchb.com


Andrew R. Kaufman (*pro hac vice*)
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
222 Second Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (615) 313-9965
Email:  akaufman@lchb.com


Matthew R. Wilson (*pro hac vice*)
Michael J. Boyle, Jr. (*pro hac vice*)
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066
Email:  mwilson@meyerwilson.com
Email:  mboyle@meyerwilson.com

*Attorneys for Plaintiff and the Proposed*

9

*Classes*

## <u>SERVICE LIST</u>

Beth-Ann E. Krimsky

William Tucker

Greenspoon Marder, PA

200 E Broward Blvd, Ste 1800

Ft Lauderdale, FL 33301

954/527-2427

954/333-4027 (fax)


Jeffrey Fisher

Kilpatrick Townsend & Stockton LLP

1100 Peachtree Street NE, Suite 2800

Atlanta, GA  30309-4528

404 685 6772

404 541 4685